**STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Appellant,**

v.

**John Forrest JOHNSON et al., Exceptions of Ray Morris, et al., Respondents.**

**No. KCD 28374.**

Missouri Court of Appeals, Kansas City District.

Feb. 27, 1978.

Bruce A. Ring, Chief Counsel, Earl H. Schrader, Jr., Darold W. Jenkins, Asst. Counsel, Kansas City, for Mo. State Highway Commission.

Dan Hale, Strop, Watkins, Roberts & Hale, St. Joseph, for respondents.

Before WELBORN, Special Judge, Presiding, SHANGLER, J., and HIGGINS, Special Judge.

ROBERT R. WELBORN, Special Judge.

Condemnation proceeding. Commissioners awarded Ray Morris and his wife $41,-040 damages. Both State Highway Commission and Morris excepted to commissioners' award. On jury trial, damages were assessed at $90,000.00. State Highway Commission appeals.

Ray Morris and his wife own a 380-acre farm in Holt County, between Mound City and Craig. U. S. Route 59 crossed the farm in a northwest-southeast direction. The portion lying generally south of Route 59, consisting of some 300 acres, was bottom land. That to the north, some 80 acres, was hill or bluff land. This action involves the taking of 28.20 acres of the farm for new permanent right-of-way for Interstate Route 29, which ran through the bottom land on the farm south of and roughly

parallel to Route 59, leaving 166.24 acres south of the new highway. Also taken were 2.35 acres for a county road and 2.02 acres for use as permanent drainage easements. The commission also appropriated 26.39 acres of the hill land as a borrow area and a temporary easement of 2.30 acres as a roadway from the borrow area to the construction site. Those areas were returned to the owner of the land upon completion of the project.

The condemnation petition was filed July 13, 1971. Report of Commissioners was filed January 13, 1972. Both parties excepted to the report and the exceptions went to trial before a jury on July 14, 1975. Morris, testifying in his own behalf, stated that the farm had a value of $340,000 before the taking and $226,000 afterwards. Other witnesses for Morris testified to comparable damage. Witnesses for the commission testified to before and after values of $235,290 and $202,440, or $32,850 damages, and $213,575 and $185,575, or $28,000 damages. The verdict was for $90,000.00.

In this court, the points of error relate to rulings by the trial court on the admission of testimony. The first relates to testimony by Morris concerning a recurring maintenance problem that he would have with drainage ditches in his bottom land as a result of the presence of the new highway.

Morris had farmed the land since 1944, first as a tenant, and, since 1964, as the owner. The 300 acres of bottom land was silt loam, in the Little Tark bottoms. Proper drainage of that area was important to its productivity. He had spent 30 years getting it properly drained. He had dug a ditch that ran north and south through the land, emptying into the Little Tark drainage ditch. I-29 crossed that ditch and run-off from the roadway emptied into it. Morris had also dug a ditch along the south part of the farm. This ditch joined the one through the center of the farm shortly before it emptied into the Little Tark ditch.

According to Morris, he had to watch the way he plowed the bottom land to keep the ditches open. He stated that in his opinion, the day before the taking, the 300-acre tract drainage was "perfect * * * everything was drained. I didn't have any pot holes. I think I was raising a crop on every foot of that land."

Appellant's claim of error arises from the following in the examination of Morris by his attorney:

"Q Now, Mr. Morris what are you going to have to—what is going to be the situation the next just say ten years about the drainage on your farm? Will you tell the Court and jury about that, what will that situation be?

* * * * * *

"A Yes, sir. I will have to work at these ditches all the time. They keep silting in and I will have to keep digging them out and work at them all the time.

"MR. JENKINS: Object to the answer as being speculative and conjecture.

"THE COURT: Overruled. The jury will weigh it. It's for the weight of it.

"Q (By Mr. Hale): What will happen if you do not keep these ditches cleaned out, Mr. Morris?

"MR. JENKINS: Same objection. Speculation and conjecture.

"THE COURT: Overruled.

"THE WITNESS: If I don't the ditches fill up and that cuts my drainage off in the fields. I have to keep those ditches open to keep my drainage out of the field."

* * * * * *

"Q In your opinion from having farmed this farm the last thirty years and from seeing the conditions that now exist there, will you have an annual recurring job there to keep these ditches cleaned out more than you would have had had the highway not come through there?

"MR. JENKINS: Object, Your Honor, again an attempt to double damage the State.

"THE COURT: Overruled.

"THE WITNESS: Yes, sir."

Between the two above-quoted excerpts from Morris's testimony was an unobjected

to question put to the witness, to which he replied without objection:

"Q (By Mr. Hale): Mr Morris, I am asking you a question about the conditions you have of silting if you have such a condition that now exists on your farm since the right-of-way has been built?

\*   \*   \*   \*   \*   \*

"A This center ditch here, all this soil on this I–29 where it compacted it and so forth that all drains over to my center ditch, and they have taken bluegrass sod and sodded the crossing that crossed my drainage ditch with bluegrass sod and each little shower we get of rain that moves any soil comes down here and this bluegrass sod catches it, and the next rain then catches a little more soil and grows up through it. Eventually that is filling back in my tube. I have to have a tube back here and a tube back here and it fills my ditches all the way down through here. Just catches a little soil from each rain and eventually that builds up and fills my ditches."

Appellant here contends that the testimony of Morris to the effect that increased the drainage of the bottom land resulting from the location of the highway across his property was a factor which reduced the value of his remaining land was "pure speculation and conjecture." Appellant asks:

" \*   \*   \* How could Mr. Morris know that silt from the fill within the right-of-way would, after the prime contractor had finished his construction, continue to migrate into his drainage ditch, outside the maintenance areas, in amounts that would, in conjunction with silt migration from his own land, materially and substantially interfere with his row crop operations to an extent that it would be reflected in the fair market value of the farm? Further, and assuming that the silting condition in his drainage ditch, outside the state maintenance area, which he had encountered, was, in part, coming from the unfinished highway, and that that was sufficient to be a land market value (which counsel vigorously denies), how could the jury separate out the value of the market depressant factor contributed by the silt from his own land,

the silting factor that pre-existed the public highway?"

■ Having farmed the land for 30 years, Morris was acutely aware of the relationship between the proper drainage of his land and its productivity. He had dug the ditches and knew what was required to keep them open and effectively operating. He testified to his observations concerning the effect on his ditches of the highway construction across his land. The fact that the construction had not been entirely completed did not preclude his expression of an opinion as to what would be required in the future. See *State ex rel. State Highway Commission v. Moulder*, 509 S.W.2d 131 (Mo.1974).

■ As the owner of the property, Morris was competent to testify to the reasonable market value of the farm " \*   \*   \* upon the assumption that he is particularly familiar with it and knows of the uses to which it is particularly adaptable, \*   \*   \*." *Shelby County R-IV School District v. Herman*, 392 S.W.2d 609, 613 [6–10] (Mo.1965). That the condemnor's use of the property taken would adversely affect the drainage of the land remaining was a proper factor to be considered in assessing the after-taking value of the farm. *State ex rel. State Highway Commission v. McMurtrey*, 300 S.W.2d 521, 527[8, 9] (Mo. 1957). Morris's testimony showed his familiarity with the drainage problem. His testimony was based upon observation of what had occurred on his land. It related to a "prospective use factors \*   \*   \* reasonably apparent at the time of appropriation and which a purchaser would normally consider in determining the value of the remaining property." *State ex rel. State Highway Commission v. Vesper*, 419 S.W.2d 469, 473 (Mo.App.1967).

■ In Vesper, relied upon by appellant, the evidence there involved was found to have been improperly admitted. In that case, the question arose concerning evidence that some three months after the taking and in the course of the construction, a tree was removed and allowed to fall into the

**104**

condemnee's yard, damaging the yard and house. The court held that evidence "did not relate to a factor of market value reasonably apparent at the time of appropriation." Ibid. From his knowledge and experience, Morris could testify with a reasonable degree of certainty that the existence of the highway across his farm would adversely affect the drainage. Therefore, the trial court did not err in refusing to exclude his testimony on the grounds that it was speculative and conjectural.

■ Appellant's second assignment of error relates to testimony as to what would be required to make the "borrow" area productive land. As above noted, the commission took 26.39 acres of hill land as a borrow area. It actually used approximately 17 acres of the tract. Some 538,000 cubic yards of dirt were removed, the contractor removing the top of a ridge running through the area. The respondents presented the testimony of Leonard Bestgen who had worked for some 35 years in farm conservation. The witness testified in detail to the steps which, in his opinion, would be required in order to make the borrow area productive farm land. Appellant here asserts that the trial court erred in overruling its motion to strike Bestgen's testimony for the reason that the testimony put before the jury an inconsistent theory of recovery which subjected the plaintiff to double damages. Appellant argues that the testimony put before the jury a basis for recovery by defendant for not only the diminished market value of the property but also the cost of restoration.

There is no necessity to recite in detail the testimony to which appellant now objects. Dispositive of the complaint on appeal is the statement of appellant's counsel in his objection in the trial court. In his objection counsel stated:

"It is double damaging. I want this record to reflect my objection. It is an improper method because you are seeking to recover the cost of curing it to a higher use than it was before, Your Honor, and that is double damaging. He can testify as to what has to be done but if he testifies as to what it costs I think you have got error in your case. The record reflects my objection.

"THE COURT: I will permit the witness to testify as to what must be done, but the cost of rehabilitation I don't believe—I think might be misinterpreted by the jury, and I will limit his testimony as to what must be done in order to put the land in its former use."

The examination proceeded in accordance with the court's ruling. At the conclusion of the witness's testimony, appellant's counsel moved to strike the testimony on the grounds that it improperly injected a "cost to cure" theory of damages into the case. The motion to strike was overruled.

Having agreed that the witness might testify to what was required to rehabilitate the borrow area so long as he did not specify the cost of the work, appellant is now in no position to complain that the trial court accepted this position. *Parker v. Metropolitan St. Ry. Co.*, 140 Mo.App. 703, 126 S.W. 759, 760 (1910).

*Judgment affirmed.*

All concur.